## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**THERESA A. CHABOT**,                                    Case No.  **05-62798-7**

Debtor.

---

**THERESA A. CHABOT**,

Plaintiff.

-vs-                                                                          Adv No.  **05-00128**

**WASHINGTON MUTUAL BANK**,

Defendant.

## MEMORANDUM OF DECISION &
## PROPOSED FINDINGS AND CONCLUSIONS

At Butte in said District this 10th day of May, 2007.

Pending in this adversary proceeding is the Defendant Washington Mutual Bank's

("WaMu") motion for summary judgment, filed on February 5, 2007, and Plaintiff/Debtor

Theresa A. Chabot's ("Chabot") objection.  Also pending is WaMu's amended motion for relief

from the automatic stay and for in rem relief filed in the above-captioned Chapter 7 case on

October 24, 2005, and Chabot's objection thereto, which were consolidated with this adversary

proceeding.  The parties have filed briefs on WaMu's motion for summary judgment which have

been reviewed by the Court, together with the record and applicable law.  This matter is ready for

submission.  For the reasons set forth below WaMu's motion for summary judgment is granted in

1

part and the Court will submit proposed findings of fact and conclusion of law to the district court recommending that Counts Two, Three, Four, Five, Six, Seven, Eight, and Nine of Chabot's complaint be dismissed with prejudice and that Count One of the complaint be dismissed without prejudice. WaMu's motion for relief from the automatic stay will be granted in part as the stay is terminated, and the hearing will proceed as scheduled commencing on May 30, 2007, on WaMu's motion for in rem relief.

## JURISDICTION

Plaintiff allege and Defendant do not dispute that this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334. The pending matters include both non-core proceedings, and core proceedings involving motions to terminate or modify the automatic stay under 28 U.S.C. § 157(b)(2)(G). At issue is: (1) Whether WaMu waived statutes of limitations affirmative defenses by failing to include them in its answer but raised them in its motion for summary judgment; (2) whether Chabot's adversary claims for relief are barred by applicable statutes of limitation or statute of repose; and (3) whether the automatic stay has been terminated, and whether WaMu's foreclosure should otherwise be enjoined. With respect to the non-core proceedings, this Memorandum of Decision includes proposed findings of fact and conclusions of law for submission to the district court pursuant to FED. R. BANKR. P. 9033, 11 U.S.C. § 157(b)(4) and FED. R. BANKR. P. 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

Pursuant to FED. R. BANKR. P. 9033 and after the bankruptcy court files these proposed findings and conclusions, the clerk of court shall serve copies of these proposed findings and conclusions on all parties by mail and note the date of mailing on the docket. Within 10 days

after being served with a copy of the proposed findings and conclusions, a party may serve and file with the clerk of bankruptcy court written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection.  A party may respond to another party's objection within 10 days after being served with a copy thereof.  An objecting party shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.  The time for filing objections may be extended by the bankruptcy judge for a period not exceeding 20 days from the expiration of the time otherwise prescribed. Any request for extension should be filed prior to the expiration of the objection period.  After the expiration of the above time period, the clerk shall transmit this Memorandum and Proposed Findings and Conclusions together with any filed objections to the district judge, with notice to the parties of such transmission.  The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

## PROCEDURAL HISTORY

The Debtor Theresa Chabot filed a Chapter 13 petition, Schedules and Statements on August 22, 2005, listing her homestead at 125 Lidstrom Rd in Whitefish, Montana, on Schedule A, with a current market value of $375,000.00 and encumbered by a secured claim stated in the amount of $425,228.07.  Initially Debtor was represented in her case by attorney M. Penny Leatzow ("Leatzow").  Schedule D identifies WaMu as the creditor with a claim marked

"Disputed" in the amount of $425,448.07 secured by a deed of trust dated 3/25/2002. WaMu filed Proof of Claim No. 1 on September 16, 2005, asserted a secured claim in the amount of $430,715.88, with attached copies of a deed of trust and fixed/adjustable rate note. No objection to WaMu's Proof of Claim has been filed, but Chabot filed an amended Schedule D on November 13, 2005, checking the box stating debtor "has no creditors holding secured claims"[1]. WaMu filed a motion for relief from the stay and for in rem relief on October 4, 2005. Debtor moved to convert her case to Chapter 7 on October 6, 2005, which was granted by Order entered on October 7, 2005.

WaMu amended its motion for relief from stay and for in rem relief on October 24, 2005 (Docket No. 26), to which the Debtor filed an objection on November 8, 2005. In its motion for relief from the stay WaMu allege that Debtor is in default of two (2) post-petition installments. Debtor's objections do not specifically deny the default, but generally deny all of WaMu's allegations and further incorporates all nine Counts of her adversary complaint. The Trustee filed a consent to WaMu's motion to modify stay on November 9, 2005.

On November 16, 2005, the United States Trustee filed a Stipulation with Chabot and her attorney providing for waiver of Debtor's discharge. The Court approved the Stipulation to Waive Discharge by Order entered on November 17, 2005, which provided in part: "Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(8)"[2].

---

[1]A proof of claim executed and filed in accordance with the rules "shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f) ("Evidentiary Effect").

[2]The automatic stay of 11 U.S.C. § 362(a) continues until the earliest of – "if the case is a case under Chapter 7 . . ., the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(C). Under this provision the automatic stay terminated on November 17, 2005.

4

On November 7, 2005, the Debtor filed her complaint in her Chapter 7 case, and initiated this adversary proceeding by refiling her complaint against WaMu on November 9, 2005.  The complaint includes nine (9) counts alleging violations of various state and federal statutes, fraud, unconscionable contract and usury, and in addition sets forth an answer and affirmative defenses to WaMu's motion for relief from stay and in rem relief.  In the prayer of her complaint Chabot requests statutory damages, compensatory damages, exemplary damages, that the Court rescind the loan transaction "without obligation to pay for the loan," award her attorney fees and costs, that the automatic stay remain in place and that WaMu be permanently enjoined from its foreclosure-related remedies.

WaMu filed an answer denying the material allegations of the complaint, and lists affirmative defenses including but not limited to fraud by the Plaintiff, estoppel, laches, and "the statute of frauds, or any of them."  And at paragraph 48 WaMu "reserves the right to claim additional affirmative defenses as further discovery or information may warrant."  The prayer of WaMu's answer includes a request that the complaint be dismissed and that its motion to modify stay be granted.

WaMu filed a motion to compel discovery, which was resolved by the parties.  On February 5, 2007, WaMu filed its motion for summary judgment, with a statement of uncontroverted facts and supporting brief, moving for summary judgment on all of Plaintiff's claims on the basis the complaint was untimely filed.  WaMu also filed a motion in limine on the same date. Chabot filed a substitution of herself for her attorney Leatzow, which the Court set for hearing on March 8, 2007.  Leatzow filed a motion to withdraw as Plaintiff's counsel, which the Court granted by Order entered in this adversary proceeding on March 5, 2007, which allowed

Chabot to proceed pro se.  Leatzow's motion to withdraw as Debtor's attorney in the Chapter 7 case was granted by Order entered on March 14, 2007.

On March 8, 2007, after a hearing the Court granted WaMu's motion in limine (Docket No. 54).  Based on Chabot's failure to comply with the Court's Scheduling Order requiring disclosure of experts, and failure to request an extension, the Court precluded Chabot from offering any expert testimony on any issue at trial in this matter.  The original trial date was extended and reset for May 30, 2007, at Missoula.

Caughron filed an appearance as Plaintiff's attorney in the instant adversary proceeding, and filed responses to WaMu's motion for summary judgment and Statement of Uncontroverted Facts on April 6, 2007.

The Court has reviewed the pleadings, WaMu's motion for summary judgment, the statement of uncontroverted facts and exhibits, Chabot's statement of disputed issues, the parties' memoranda, and WaMu's reply.  The Court is now ready to issue decisions in this proceeding.

## I. UNCONTROVERTED FACTS

Montana Local Bankruptcy Rule ("Mont. LBR") BR 7056-1(a)(1) requires the moving party to submit a statement of uncontroverted facts.  Defendant filed a 7-page Statement of Uncontroverted Facts setting forth the following:

    1.  In late February 2002, Chabot searched the internet for loans to refinance her home and to pay off some debts incurred by the now-defunct business Big Mountain Woodworks, which she and her husband owned and operated.  Depo. Theresa Chabot 16:2-17:6 (Dec. 4, 2006) (Ex. A).

    2.  During that search, Chabot made contact with a mortgage broker for HomeFirst Mortgage ("HomeFirst") in California.  The broker agreed to secure her a loan.  Depo. Chabot 17:7-24 (Ex. A).

6

3. HomeFirst was an independent broker of loans offered by lending institutions, including but not limited by WaMu. Def. WaMu Resp. Pl.'s First Interrogs Reqs Prod. Ans. Interrog. No. 11 (Ex. B). HomeFirst provided these brokerage services pursuant to a Premiere Mortgage Broker Agreement dated March 1, 1999 (the "Broker Agreement") (Ex. C). Under the Broker Agreement, HomeFirst provided its services on a non-exclusive basis and was compensated on a per-loan basis. Broker Agreement ¶¶ 1, 9. The Broker Agreement did allow the broker to earn additional compensation from the applicant, however that was a matter of contract between the broker and the applicant and did not involve WaMu. Broker Agreement ¶ 9(a). Furthermore, HomeFirst had no authority on behalf of WaMu to enter into any transactions on WaMu's behalf. Broker Agreement ¶ 5(b). Instead, the Broker Agreement specifically provided that HomeFirst was an independent contractor and not an agent of WaMu. Broker Agreement ¶ 11.

4. On or about February 25, 2002, HomeFirst Mortgage prepared a Good Faith Estimate for Chabot that disclosed the following items: (a) a 12.15% interest rate fixed for the first two years; (b) various loan costs, including a $8,500 "Mortgage Broker Fee" in line 808; and (c) a yield spread premium of $5,860.00 as "Compensation to Broker." Depo. Chabot Ex. 8 (Ex. E); Dep. Chabot 33:7-34:9 (Ex. A). Chabot discussed this Good Faith Estimate with HomeFirst. Depo. Chabot 35:2-9 (Ex. A).

5. On March 14, 2002, WaMu sent an initial loan package to Chabot's correct address which included a number of initial loan documents for Chabot's review. Depo. Chabot Ex. 5 (Ex. D1). Included in this initial loan package were the following documents:

a. A Good Faith Estimate from WaMu which discloses: (1) an adjustable interest rate of 12.15%; (2) the various fees and costs of the loan in items 800-810; and (3) a premium yield adjustment in item 807. Depo. Chabot Ex. 6 (Ex. D2); Depo. Chabot 29:21-30:18 (Ex. A).

b. A publication from the U.S. Department of Housing and Urban Development entitled Settlement Costs and Helpful Information, which explained to Chabot the various disclosure documents she would receive and how to read them. Depo. Chabot Ex. 7 (Ex. D3).

c. A preliminary Truth in Lending Disclosure Statement, which disclosed the cost of the credit being extended to Chabot as well as the fact it was an adjustable interest rate loan. Depo. Chabot Ex. 9 (Ex. D4).

d. A document entitled "2 Year Fixed/Adjustable Rate Loan Principal Dwelling Program Disclosure" which explained how Chabot's

interest rate could adjust under the terms of her loan.  Depo. Chabot Ex. 11 (Ex. D5).

6.  On March 25, 2002, Chabot attended the closing of the loan at the office of Sterling Title, where she spent between 30 and 45 minutes signing closing documents.  Depo. Chabot 40:24-41:11 (Ex. A).  At the closing, Chabot was given the opportunity to review and execute the following documents:

a.  A Fixed/Adjustable Rate Note, with an original principal balance of $293,250, and requirements that Chabot to [sic] make regular monthly payments of principal and interest beginning on May 1, 2002, and ending on April 1, 2032.  Depo. Chabot Ex. 12 (Ex. E1).

b.  A Fixed/Adjustable Rate Rider, which sets the terms of adjustment for Chabot's interest rate on her loan.  Depo. Chabot Ex. 15 (Ex. E2).

c.  A Deed of Trust, which secures the repayment of Chabot's loan and provides in paragraph 21 the right to foreclose and sell Chabot's home should she default on the terms of the note.  Depo. Chabot Ex. 16 (Ex. E3).

d.  A document entitled "2 Year Fixed/Adjustable Rate Loan Principal Dwelling Program Disclosure" which explained how Chabot's interest rate could adjust under the terms of her loan.  Depo. Chabot Ex. 17 (Ex. E4).

e.  A Good Faith Estimate which discloses:  (1) an adjustable interest rate of 12.15%; (2) the various fees and costs of the loan in items 800-812; and (3) a premium yield adjustment of $5,860.00 as "Compensation to Broker (Not Paid Out of Loan Proceeds)".  Depo. Chabot Ex. 18 (Ex. E5).

f.  A Notice of Right to Cancel, which advises Chabot of her right to rescind her loan up to March 28, 2002.  Depo. Chabot Ex. 19 (Ex. E6).

g.  A final Truth in Lending Disclosure Statement, which disclosed the cost of the credit being extended to Chabot as well as the fact the loan included an adjustable interest rate.  Depo. Chabot Ex. 20 (Ex. E7).

h.  A Settlement Statement, often referred to as a "HUD-1," which disclosed all "ITEMS PAYABLE IN CONNECTION WITH

8

LOAN," including but not limited to an loan origination fee (line 801); a broker application fee (line 805); and a yield spread premium (line 811). Depo. Chabot Ex. 21 (Ex. E8).

7.   Chabot left the title company on March 25, 2002, without copies of the closing documents but received copies of these documents a week or two later but no later than April 2002.  Depo. Chabot 51:5-22 (Ex. A).

8.   The same day as the closing, March 25, 2002, Chabot received a telephone call from another broker competing with HomeFirst for her business. That broker informed her that he could procure a loan from WaMu for her at a lower interest rate, 10.5%.  The broker stated that the fees HomeFirst charged were "illegal" and instructed her how to rescind the loan.  Depo. Chabot 20:15-24:19 (Ex. A).

9.   Chabot then faxed a rescission letter to HomeFirst but ultimately decided to withdraw her rescission of the loan after HomeFirst agreed to provide her with a rebate of about $3,400.  Depo. Chabot 20:15-23:16 (Ex. A).

10.   On March 28, 2002, HomeFirst sent the rebate to Chabot with the following terms:

> Pursuant to our discussion, we are rebating to you $3,432.50 on or before Saturday, March 28, 2002.  This rebate is in lieu of an interest rate reduction.  It is understood that your interest rate will remain at 12.15%, however, your effective rate shall be lowered at your discretion in the event that our rebate is distributed over a monthly basis [illegible] payments you make to Long Beach Mortgage Company.

Chabot executed this letter attesting that she agrees to the foregoing.  (Ex. F)

11.   Chabot made the first scheduled payment on the loan but has not made another payment since May 2002.  Depo. Chabot 64:10-14 (Ex. A).

12.   Due to Chabot's immediate default, WaMu first began contacting her in May 2002 in an attempt to collect the debt.  Decl. Marlene Petros ¶ 3 (February 5, 2007) (Ex. G).

13.   Since about June 2002, Chabot has worked as a "credit restoration" counselor who assists people with their credit reports so they qualify for mortgages and other financing.  Depo. Chabot 7:16-23 (Ex. A).  She learned these skills from an attorney in California.  Depo. Chabot 8:4-20 (Ex. A).

14.  In 2003 or 2004, Chabot sought legal advice that resulted in her filing a previous bankruptcy.  Depo. Chabot 71:12-16 (Ex. A).  She did not raise the claims in this litigation in that bankruptcy.  This bankruptcy was later dismissed. Depo. Chabot 72:3-16 (Ex. A).

15.  WaMu's computerized database records transactions as they are occurring through customer service personnel entries into that database system. Decl. Petros ¶ 3 (Ex. G).  WaMu has no record of calling Chabot on the telephone regarding her default between October 2004 and December 2004.  Decl. Petros ¶ 4 (Ex. G).11

16.  In ths summer of 2005, a friend referred Chabot to an Arkansas resident John Dunn, who is not an attorney.  Chabot sent copies of her mortgage documents for review by him and his "paralegal team".  Depo. Chabot 65:13-68:25 (Ex. A).  Mr. Dunn and his team informed Chabot that he believed the loan documents were in violation of federal law.  Depo. Chabot 68:13-25 (Ex. A).

17.  On October 12, 2005, Chabot signed and sent a certified letter to "WAMU, P.O. Box 60800, Los Angeles, CA" alleging various violations of the Truth-in-Lending Act and purporting to rescind the mortgage transaction.  Depo. Chabot Ex. 14 (Ex. H).  It is believed that Mr. Dunn advised Chabot to write this letter.  Depo. Chabot 70:15-23 (Ex. A).

18.  Chabot filed the current Chapter 13 bankruptcy petition on August 18, 2005.  Dkt. No. 1.  In response to a [sic] WaMu's Motion to Lift the Automatic Stay, Chabot filed a "Counter Complaint" asserting the current nine claims against WaMu on Nov. 7, 2005.  Dkt. No. 32.

WaMu's Statement of Uncontroverted Facts is accompanied by twenty (20) exhibits, including

Chabot's deposition, loan documents, correspondence, and sworn declaration of Marlene Petros

(Ex. G), as referred to in WaMu's above list of uncontroverted facts.

Mont. LBR 7056-1(a)(2) requires a party opposing the motion for summary judgment to

file a "separate, short, and concise 'Statement of Genuine Issues', setting forth the specific facts,

which the opposing party asserts establishes a genuine issue of material fact precluding summary

judgment in favor of the moving party . . . together with an opposition brief."  Mont. LBR 7056-

1(a)(3) provides "[a]ll material facts in the moving party's Statement of Uncontroverted Facts are

deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party."   The Plaintiff filed on April 6, 2007, a "Plaintiff's Response to Defendant's Statement of Uncontroverted Facts" setting forth that the following "alleged 'facts' are in dispute":

> a.  Lender did not give Theresa Chabot the required preliminary TILA disclosures and the required 3-day cooling off period in the manner required by 12 CFR §§ 226.17, 226.18, 226.19 and 226.23.

> b.  All disclosures that were given to Theresa were given to her after the closing sometime in April, rendering the Notice of Right to Cancel or Rescind the loan in-operable.

> c.  Lender did not provide an accurate final TILA disclosure as the "Yield Spread Premium" ("YSP") was not disclosed 3 days prior to closing or 3 days after the Lender received the application, in violation of 12 CFR § 226.4, § 226.17, 18 and 19, which was a basis for rescission.

> d.  The Truth in Lending disclosure at the annual percentage rate and finance charge boxes are grossly understated by more than a hundred dollars due to the loan was amortized as a fixed rate loan in violation of 12 CFR §§ 226.17 and 226.18, and as defined at 15 USC § 1602(u), which is a basis for rescission.

> e.  The Truth in Lending disclosure at the amount of payments is grossly understated due to, among other things, the inclusion of the number of payments as that pertains to an adjustable rate mortgage in violation of 12 CFR § 226.18(g), which is also a basis for rescission.

> f.  There were no Truth in Lending disclosures disclosing to the Defendant where to look in appropriate contract documents about non-payment, default, and the right to accelerate in violation of 12 CFR § 226.18(p), which is also a basis for rescission.

Plaintiff's Response to Defendant's Statement of Uncontroverted Facts is signed by her attorney Caughron, not by Chabot.  Neither are Plaintiff's alleged "disputed facts" supported by any

accompanying depositions, sworn statements or declarations[3], or any attached exhibits or references to exhibits.

## II. SUMMARY JUDGMENT

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

---

[3]The sole sworn declaration which is a part of Chabot's Response alleging disputed facts is the declaration of electronic service by Caughron's assistant.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986) (Brennan dissent) (citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  In the instant case WaMu identified the portions of Chabot's deposition, and accompanying exhibits establishing an absence of material fact with respect to its motion for summary judgment, which is based mostly on various statutes of limitations and a statute of repose, taken together which satisfies this Court that WaMu has satisfied its burden.  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e)*.  See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits

which are based on personal knowledge and the facts set forth therein must be admissible into

evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues

of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48,

106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a

grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S.

at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or

defense and whose existence might affect the outcome of the suit. The materiality of a fact is

thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment

proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec.

Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine

whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed

background or contextual facts, are such that a rational or reasonable jury might return a verdict

in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any

disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a

matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

In the instant adversary proceeding Chabot did not include with her response to WaMu's

statement of uncontroverted facts any affidavits which are based on personal knowledge as

required by *Aquaslide*, 85 B.R. at 547, or any proposed exhibit, and did not include reference to

WaMu's extensive list of exhibits attached to its statement of uncontroverted facts. Chabot only

submitted attorney argument signed by her attorney Caughron, and attorney argument is not

evidence and does not create issues of fact. *Hurley v. Student Loan Acquisition Auth. of Ariz.*, *et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994).

Because Chabot failed to submit affidavits or reference to the record in her purported statement of disputed issues as required by *Aquaslide*, 85 B.R. at 547, this Court concludes that WaMu has satisfied its burden of showing that no genuine issues of material fact exist with respect to its statute of limitations and statute of repose defenses. The Court's inquiry shifts to whether Defendant is entitled to a judgment as a matter of law. The Court concludes that WaMu is entitled to judgment as a matter of law.

### III. DISCUSSION

#### a. Contentions of the Parties.

WaMu contends that it is entitled to summary judgment as a matter of law because Chabot's complaint was untimely filed and now barred by applicable statutes of limitations and statute of repose, because she waived many of the rights she seeks to enforce, and because she cannot produce admissible evidence to establish her claims.

Chabot argues that summary judgment is not proper given the existence of her alleged genuine issues of material fact, and that WaMu failed to make and deliver proper disclosures to her of her right to rescind, so she should be entitled to rescind the loan and WaMu's claim should

be declared an unsecured claim.  She contends that her claims are not time-barred because, first,

WaMu's institution of foreclosure proceedings triggered her right to enforce her statutory

remedies, and second, that her right to seek rescission did not begin to run until she received the

required number of copies of the notice of right to rescind and the required disclosures under

federal law.  Chabot argues that WaMu waived each of the applicable statutes of limitations upon

which WaMu bases its motion for summary judgment, under FED. R. CIV. P. 8(c) by failing to

raise them as affirmative defenses in its answer, citing case law from outside of the Ninth Circuit

and Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1278 (2d

ed. 1990).  The parties' specific contentions regarding individual Counts will be discussed

separately below.

### b.  Waiver of Statutes of Limitations under Rule 8(c).

Chabot argues that WaMu failed to include in its answer the affirmative defenses of

statutes of limitations and statute of repose, and that as a result those affirmative defenses are

barred for failing to comply with FED. R. CIV. P. 8(c) (applicable in adversary proceedings under

FED. R. BANKR. P. 7008(a)).  Rule 8(c) provides:

> Affirmative Defenses.  In pleading to a preceding pleading, a party shall set forth
> affirmatively accord and satisfaction, arbitration and award, assumption of risk,
> contributory negligence, discharge in bankruptcy, duress estoppel, failure of
> consideration, fraud, illegality, injury by fellow servant, laches, license, payment,
> release, res judicata, statute of frauds, *statute of limitations*, waiver, and any other
> matter constituting an avoidance or affirmative defense.  When a party has
> mistakenly designated a defense as a counterclaim or a counterclaim as a defense,
> the court on terms, if justice so requires, shall treat the pleading as if there had
> been a proper designation.

(Emphasis added).

A statute of limitations is an affirmative defense, and as such should be raised in the first

16

responsive pleading in order to avoid waiver under Rule 8(c) and FED. R. CIV. P. 12(b).

*Morrison v. Mahoney*, 399 F.3d 1042, 1044-45 (9th Cir. 2005); *Nardi v. Stewart*, 354 F.3d 1134,

1141 (9th Cir. 2004) (agreeing with Third and Sixth Circuits that the state waived its statute of

limitations defense by filing a responsive pleading that failed to affirmatively set forth the

defense).  However, Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1278, goes on to

explain that the general waiver rule with regard to omitted affirmative defenses has numerous

exceptions, including that the substance of many unpleaded Rule 8(c) affirmative defenses may

be asserted by pretrial motions, "particularly in the absence of any showing of prejudice to the

opposing party and assuming that it has had an opportunity to respond."  Wright & Miller,

FEDERAL PRACTICE AND PROCEDURE § 1278[4].  Chabot has not argued nor made any showing of

undue prejudice resulting from WaMu's assertion of statutes of limitations and statute of repose

in its motion for summary judgment, and Chabot has had an opportunity to respond to its motion

and statute of limitations arguments.

    *Morrison* and *Nardi* involved habeas corpus petitions after criminal convictions.

*Morrison*, 399 F.3d at 1044; *Nardi*, 354 F.3d at 1135.  The Ninth Circuit in *Morrison* wrote that

a state waives its statute of limitations defense by filing a responsive pleading that fails to

affirmatively set forth an affirmative defense, but nonetheless it affirmed a district court's

dismissal of the habeas petition based on an affirmative defense when the affirmative defense

was raised in an initial motion to dismiss filed prior to its responsive pleading.  399 F.3d at 1046-

47, citing *United States v. Valdez*, 195 F.3d 544, 548 (9th Cir. 1999).  In *Nardi*, the Ninth Circuit

---

[4]Section 1278 of Wright & Miller goes on to note that even if a defendant does not assert an affirmative defense in the answer, he may amend that pleading under Rule 15(a) by leave of the court, which "shall be freely given when justice so requires."

reversed dismissal based on an affirmative defense which had been raised *sua sponte* by the district court after the state had filed an answer which failed to raise the statute of limitations defense.  354 F.3d at 1141-42.  Both *Morrison* and *Nardi* are distinguishable from the facts of this case.

In *Camarillo v. McCarthy*, 998 F.3d 638, 639 (9th Cir. 1993), the Ninth Circuit wrote:  "In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment.  *See Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984)."  The Ninth Circuit did not construe, and did not expressly overrule *Rivera* and *Camarillo* in either *Nardi* or *Morrison*.  After *Morrison*, the Ninth Circuit cited *Camarillo* in *Janis v. Commissioner of Internal Revenue*, 461 F.3d 1080, 1085 n.3 (9th Cir. 2006).  The district court in *Sharer v. Oregon*, __ F.Supp.2d __, 2007 WL 987450, *8, (D. Or. 2007),  recently cited *Camarillo* and *Rivera* in dismissing a claim based on the affirmative defense of statute of limitations raised for the first time at summary judgment, where plaintiffs failed to identify any prejudice resulting from the time elapsed between defendants' answer and defendants' assertion of the statute of limitations in their motion for summary judgment.

Since WaMu included its statutes of limitations defenses in its motion for summary judgment and Chabot has had the opportunity to respond and failed to argue or show any prejudice, this Court will allow WaMu to raise its affirmative defense of the statutes of limitations based on the holdings of *Camarillo* and *Rivera* which remain good law in this Circuit.

### c. Counts Two (Truth in Lending Act ("TILA")), Six (Rescission under TILA) & Seven (Consumer Protection under 15 U.S.C. § 1640).

Counts Two, Six and Seven of Chabot's complaint are based on provisions of the Federal

18

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Chabot seeks statutory damages and

rescission for alleged violations of TILA. WaMu contends that it is entitled to summary

judgment on Counts Two, Six and Seven because Chabot's attempts to rescind are too late under

TILA's three-year statute of repose, 16 U.S.C. § 1635(f), which provides:

> (f) Time limit for exercise of right. An obligor's right of rescission shall expire
> three years after the date of consummation of the transaction or upon the sale of
> the property, whichever occurs first, notwithstanding the fact that the information
> and forms required under this section or any other disclosures required under this
> chapter [15 USCS §§ 1631 et seq.] have not been delivered to the obligor, except
> that if (1) any agency empowered to enforce the provisions of this title [15 USCS
> §§ 1601 et seq.] initiates a proceeding to enforce the provisions of this section
> within three years after the date of consummation of the transaction, (2) such
> agency finds a violation of section 125 [this section] and (3) the obligor's right to
> rescind is based in whole or on part on any matter involved in such proceeding,
> then the obligor's right of rescission shall expire three years after the date of
> consummation of the transaction or upon the earlier sale of the property, or upon
> the expiration of one year following the conclusion of the proceeding, or any
> judicial review of period for judicial review thereof, whichever is later.

WaMu contends that § 1635(f) is a statute of repose setting a 3-year limit for rescission,

and that if the borrower fails to notify the creditor of the intention to rescind within 3 years of

closing the right to rescind is lost. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 418, 118 S.Ct.

1408, 1413 (1998). The Ninth Circuit in *Miguel v. Country Funding Corp.*, 309, F.3d 1161,

1164 (9th Cir. 2002) characterized § 1635(f) as a statute of repose and "represents 'an absolute

limitation on rescission actions' which bars any claims filed more than three years after the

consummation of the transaction. ... depriving the courts of subject matter jurisdiction when a §

1635 claim is brought outside the three-year limitation period." *Miguel* 309 F.3d at 1164, citing

*King v. California*, 784 F.2d 910, 913 (9th Cir. 1986). This characteristic of § 1635(f) as a statute

of repose defeats Chabot's argument that WaMu waived the statute of repose by failing to plead

it in its answer.  As the party asserting federal jurisdiction, Chabot has the burden of establishing

it, and challenges to subject matter jurisdiction cannot be waived and may be raised at any time

in the proceeding.  *Miguel*, 309 F.3d at 1163-64, citing *United States v. Hays*, 515 U.S. 737, 742,

115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), and *Kokkonen v. Guardian Life Ins. Co. of America,*

511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Kuntz v. Lamar Corp.*, 385 F.3d

1177, 1181 (9th Cir. 2004).

Chabot initiated rescission of her loan on the date of closing on March 25, 2002, when a

competing broker told her that the interest rate was illegal and how to rescind, but she later

agreed not to rescind in exchange for a rebate.  Statement of Uncontroverted Facts ("SUF") 8, 9,

10.  She did not file her adversary complaint within the 3-year limitation period of § 1635(f),

until 2005.   By withdrawing her attempt to rescind and not resuming it until after the three-year

period of § 1635(f) Chabot's claim for rescission under TILA is barred by the statute of repose.

Chabot argues that the disclosures required under § 1635(a) were never properly made so

the limitation period never began to toll, and the exception of rescission under § 1635(I) applies.

WaMu contends that § 1635(f) is not subject to any tolling doctrine, citing *Miguel v. Country*

*Funding Corp.*, 309 F.3d at 1164.  This Court agrees with WaMu.  Section 1635(f) provides for a

three-year statute of repose after the date of consummation "notwithstanding the fact that the

information and forms required under this section or any other disclosures required under this

chapter . . .  have not been delivered to the obligor . . . . (stating inapplicable exceptions)."  A

statute of repose is a fixed, statutory cutoff date usually independent of any variable such as the

claimant's awareness of a violation, and not subject to equitable tolling.  *Albillo-De Leon v.*

*Gonzales*, 410 F.3d 1090, 1097 & n.5 (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v.*

20

*Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)).

Chabot's contention that since the notices were not delivered to her at the time of closing the rescission period never began to run is unsupported by case law, statute, or regulation. The Supplement I to 12 C.F.R. Part 226 – Official Staff Interpretations, Supp. 1, ¶ 23(b)4, "Time for Providing notice" explains: "The notice required by § 226.23(b) need not be given before consummation of the transaction. The creditor may deliver the notice after the transaction is consummated, but the rescission period will not begin to run until the notice is given." Chabot closed her loan on March 25, 2002, and she received the notice of rescission no later than April 2002. SUF 7. By any count her right to rescind under TILA expired no later than the end of April 2005, and therefore her complaint filed in November 2005 was too late and barred under § 1635(f).

Next WaMu argues that Chabot waived her right to rescind when HomeFirst convinced her to revoke her prior attempt to rescind in exchange for a rebate, and argues that allowing her to rescind now would be prejudicial to WaMu because Chabot has lived in the home for 5 years while making only one payment. Because Chabot's right to rescind under the statute of repose § 1635(f) expired after the three-year period, the Court need not decide WaMu's contentions regarding Chabot's waiver.

Chabot contends that her allegation that she did not receive the required number of notices of her right of rescission is sufficient to state a claim for rescission, and further prays in her complaint for rescission of the loan transaction pursuant to § 1635(b) "without obligation to pay for the loan." This contention misapprehends the right of rescission both generally and as provided under TILA.

21

A leading commentator notes that, generally, a party seeking rescission or judicial cancellation of an instrument must restore the other party as far as possible to the situation occupied before the transaction, even in cases of fraud, although exceptions are recognized.  13 Am. Jur. 2d, Cancellation of Instruments § 32; *Harman v. Diversified Medical Inv. Corp.*, 524 F.2d 361, 364 (10th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976).

Section 1635(a) grants obligor the right to rescind the transaction for three business days. Chabot requests that the Court declare WaMu's claim unsecured as a result of TILA violations and her right of rescission, but § 1635(b) plainly requires "Return of money or property following rescission":

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.  The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

In *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171-73 (9th Cir. 2003), *cert. denied* 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004), the Ninth Circuit construed § 1635(b) and its tracking regulation, 12 C.F.R. § 226.23, and noted that § 1635(b) need not be interpreted as always requiring the creditor to remove its security interest prior to the borrower's tender of

proceeds, but that the court has discretion to condition rescission on tender of the property the borrower had received from the lender, citing *Palmer v. Wilson*, 502 F.2d 860, 862-63 (9th Cir. 1974). The decision to condition enforcement of rescission on the borrower's fulfillment of her rescission obligations lies within the court's equitable discretion, made on a case-by-case basis and taking into consideration all of the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the lender dismissing the borrowers' rescission claim when the borrowers could not provide evidence that they could tender the loan proceeds before trial. *Yamamoto*, 329 F.3d at 1168, 1173. In this Court's view, no less should be required of Chabot than was required of the borrowers in *Yamamoto* before she is allowed to proceed with a claim for rescission, even if it was not barred by the statute of repose.

Chabot argues that the right of rescission is available to her, as it was in *White v. Centex*, an unpublished case from the District of Kansas which was attached to her response to WaMu's motion for summary judgment. The decision is *White v. Centex* is unpublished, but the Court notes that it references the Ninth Circuit's decision in *Yamamoto* at page 7, n. 9, and conditioned the creditor's release of its mortgage on the debtor's residence upon the debtor's tender of the loan proceeds (after reduction and abatement of interest), after finding that Centex violated the TILA. *White v. Centex* provides no support for Chabot's contention that she is entitled to avoid WaMu's deed of trust without tendering the loan proceeds, particularly when the Debtor provided no sworn affidavit in support of her response to WaMu's SUF which would support a finding of TILA violations as shown in *White v. Centex*.

In the instant case Chabot's claim for rescission against WaMu for TILA violations are barred by the statute of repose, and her claim for rescission is subject to the same equitable conditions to tender the loan proceeds which were imposed in *Yamamoto* and *White v. Centex*. Chabot's claim for money damages for TILA violations are barred by the one-year statute of limitations from the date of the occurrence of the violation provided under § 1640(e).

Next, WaMu contends that Chabot cannot produce admissible evidence of a TILA violation to support her claim for recoupment under Counts Two, Six and Seven, which it admits has no time limit under 15 U.S.C. § 1640(e), which provides in pertinent part:

> This subsection does not bar a person from asserting a violation of this title [15 USCS §§ 1601 et seq.] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State Law.

WaMu bases its contentions on Chabot's failure to identify any TILA violations at her deposition, pages 83-90, and her failure to identify any expert witness to testify at trial regarding TILA violations. The Court has granted WaMu's motion in limine by Order entered on March 8, 2007 (Docket No. 54), and precluded Chabot from offering any expert testimony on any issue at trial. Notwithstanding, Chabot argues that she will be able to call witnesses at trial to establish TILA disclosure violations by WaMu, and can testify what documents were given to her and when, and that the TILA violations she alleges lend themselves to an objective analysis and do not depend on expert testimony. In the absence of any sworn affidavit by Chabot in response to WaMu's detailed statement of uncontroverted facts and supporting documents, and the applicable one-year statute of limitation of § 1640(e), the Court finds no genuine issue of material fact remains for trial and WaMu is entitled to summary judgment dismissing Chabot's

24

damage claims under TILA as a matter of law.

In addition WaMu argues that it is not the claimant in the instant adversary action – Chabot is the plaintiff, and that her defenses of recoupment and setoff under § 1640(e) are not affirmative claims for relief.  WaMu's answer includes denials and affirmative defenses, but does not assert a counterclaim or prayer which constitute "an action to collect the debt" for purposes of § 1640(e).  In other words, the instant adversary proceeding does not include Chabot's defense by recoupment or set-off to WaMu's action to collect the debt, because no such "action to collect the debt" is included in this adversary proceeding.  *See Percival v. American Home Mortg. Corp.*, 469 F.Supp. 409, 414 n.6 (N.D. Tex. 2007) (defendant had not asserted counterclaims that might invoke the exception of § 1640(e) allowing assertion of violations of TILA as a matter of defense by recoupment or set-off in an action to collect a debt); *Nix v. Option One Mortg. Corp.*, 2006 WL 166451 at *8 (D.N.J. 2006) (the exception to the one year limitations period in § 1640(e) does not apply to the borrower's damage claims under TILA where the lawsuit was not a foreclosure action by the creditor).

Chabot argues that WaMu's motion to lift automatic stay was part of its institution of foreclosure proceedings, but the Court disagrees.  WaMu's foreclosure proceedings were subject to the automatic stay, and WaMu filed its motion for relief from the stay, properly, in order to avoid committing a violation of the stay.  A motion to modify or terminate the automatic stay is a core bankruptcy proceeding, wholly separate and distinct from WaMu's foreclosure proceedings. By itself, modification or termination of the stay does not advance WaMu's foreclosure proceedings at all.  WaMu might proceed with its foreclosure remedies after obtaining relief from the stay or it may elect to do nothing, or it may reach a settlement or other resolution with the

25

Debtor.  WaMu's motion to modify stay filed pursuant to a specific provision of the Bankruptcy Code, 11 U.S.C. § 362(d), is not in any respect part of WaMu's process of seeking non-judicial foreclosure proceedings.  It did not trigger Debtor's defenses of setoff and recoupment under TILA, and those defenses simply are not before this Court.

Chabot argues that her only avenue to enforce rights to rescission and recoupment is in the context of an adversary proceeding in this Court.  The Court does not agree that Chabot lacks the right to seek legal redress outside of this Court with respect to purely noncore matters under TILA[5].

WaMu contends that as long as it seeks only to nonjudicially foreclose on its trust indenture and does not institute judicial foreclosure proceedings and seek a deficiency judgment, Chabot cannot avoid the statute of limitations on her claims by simply labeling them recoupment. The district court in the northern district of Georgia noted that § 1640(e) contemplates that state law may preclude the defensive assertion of TILA even where TILA itself does not.  *Joseph v. Newport Shores Mortg.*, 2006 WL 418293 at *2 n.1.  This Court need not decide those hypothetical questions since WaMu has not brought an action to collect the debt in this Court. The Court deems Chabot's assertions of the right of recoupment insufficient to bring WaMu's foreclosure action before this Court, and Chabot will have to assert her defenses of recoupment and setoff under TILA in another forum.

---

[5]The most this Court could do with respect to a proceeding that is not a core proceeding, under 28 U.S.C. § 157(c)(1), is to hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for consideration.  Because the stay has been terminated by denial of Chabot's discharge, as discussed above at n.2 and below, this Court declines to interpose itself in any remaining noncore proceedings between these parties.

**d.  Counts Four (Fraud) and Eight (Action for Rescission based on Fraud).**

WaMu seeks summary judgment on Counts Four and Eight on the grounds they are bound by the 2-year Montana statute of limitations on fraud, MONT. CODE ANN. ("MCA") § 27-2-203, and contends that the facts were not by their nature concealed and were not concealed by WaMu, and that Chabot had the information or opportunity to obtain knowledge regarding the facts. *Osterman v. Sears, Roebuck & Co.*, 2003 MT 327, ¶¶ 20, 27, 318 Mont. 342, ¶¶ 20, 27, 80 P.3d 435, ¶¶ 20, 27; *Johnson v. Barrett*, 1999 MT 176, ¶11, 295 Mont. 254, ¶ 11, 983 P.2d 925, ¶ 11.  WaMu argues that Chabot had copies of documents including a written estimate and HUD-1 Settlement Statement disclosing YSP and other information sufficient to commence the running of the statute of limitations, *Meyer v. Ameriquest Mort. Co.*, 342 F.3d 899, 902 (9th Cir. 2003), but that Chabot filed her complaint more than 2 years after the closing and her Claims Four and Eight are barred by § 27-2-203.  Chabot contends WaMu waived its statute of limitations defense by failing to plead it in its answer, and that her right to statutory and equitable recoupment as affirmative defenses apply.

Section 27-2-203 "Actions for relief on ground of fraud or mistake" provides:

The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

WaMu cites *Blackburn v. Blue Mtn. Women's Clinic*, (1997), 286 Mont. 60, 951 P.2d 1, and *Guest v. McLaverty*, 2006 MT 150, ¶ 5, 332 Mont. 421, ¶ 5, 138 P.3d 812, ¶ 5, for the proposition that the claimant need only the opportunity to know the facts essential to the claim, and does not have to be aware of her legal cause of action for the statute of limitations to run.

27

WaMu further argues that Chabot was advised by the competing broker that the loan was illegal on the date of closing and advised to rescind, and shortly thereafter became employed by an attorney and trained in credit restoration, and later sought legal advice from a bankruptcy attorney and Dunn, all of whom could have advised her of a potential claim.  Based on the extensive documentation submitted by WaMu and its detailed uncontroverted facts, this Court agrees that Chabot's claims for fraud and rescission based on fraud are barred by the two-year statute of limitations of § 27-2-203 because Chabot had the opportunity to know the facts essential to her claim for fraud and rescission based on fraud at the time of closing of the loan in early 2002, when she was specifically told the interest rate was illegal, but did not initiate her adversary proceeding until 2005.

WaMu argues that Chabot affirmatively waived the right to rescind the loan due to fraud when she accepted the rebate and withdrew her earlier rescission, and further argues that Chabot has not and cannot demonstrate the necessary element of fraud, i.e., a fraudulent misrepresentation, in the loan documents and disclosures, by WaMu and that the amounts shown on the documents are the amounts Chabot was charged.  Chabot argues that no written waiver of claims occurred.

Nothing illegal, deceptive or fraudulent occurs through the inclusion of a YSP.  *Smith v. Litton Loan Servicing, LP*, 2005 WL 289927 at *12 (E.D. Pa. 2005), citing *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1206-07 (9th Cir. 2003).  WaMu contends that it is not liable for any alleged misrepresentation by HomeFirst Mortgage of the interest rate on refinancing because any liability of HomeFirst Mortgage is not vicarious to WaMu, and no evidence exists in this contested matter of agency as HomeFirst is an independent contractor.

MCA § 28-10-602.  WaMu cites *Tidwell v. Homestar Real Estate Serv.'s*, 290 F.Supp.2d 729, 736 (S.D. Miss. 2003) and *Herrod v. First Republic Mortg. Corp.*, 625 S.E.2d 373, 382 (W.Va. 2005) for the proposition that claims of fraud against a lender for alleged misrepresentations by a broker should be dismissed against the lender.  Chabot argues that the existence of an agency relationship and fraudulent misrepresentation is a factual matter for trial which cannot be dispensed with on summary judgment.

The burden of proof to establish an agency was on Chabot, and she failed her burden. *Schulz v. Peake* (1978), 178 Mont. 261, 266, 583 P.2d 425, 427-28 (1978).  WaMu provided an uncontroverted fact at SUF 3 that no agency relationship exists, with supporting documents. Chabot failed in her opportunity to support the contention of agency with any deposition, sworn affidavit, or other evidence, and she relied solely on attorney argument which is insufficient to create a genuine issue of material fact.  A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Chabot's claim for rescission due to fraud under state law is subject to the Montana statute governing rescission, MCA § 28-2-1713, which provides in pertinent part:

> Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:
>
>   (1) He must rescind promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind.
>
>   (2) He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do

so.

The Court notes that the uncontroverted evidence shows that Chabot has made only one payment to WaMu on the loan over 5 years since May of 2002.  SUF 11; Dep. 64:10-14.  Instead of restoring to WaMu everything of value which it received from WaMu, as required under MCA § 28-2-1713, Chabot seeks to cancel WaMu's deed of trust without paying WaMu anything. Chabot cannot avoid addressing the equities of her long-term failure to pay WaMu under the terms of the loan.

Common maxims of equity include: "[O]ne seeking equity must do equity", *In re Marriage of Cox*, 266 Mont. 67, 71, 878 P.2d 903, 906 (1994); and "[p]arties must not expect relief in equity, unless they come into court with clean hands." *In re Marriage of Burner*, 246 Mont. 394, 397, 803 P.2d 1099, 1100 (1991); *Mitchell v. Leland Co.* (9th Cir.1917), 246 F. 103, 107; *see also Fey v. A.A. Oil Co.* (1955), 129 Mont. 300, 318, 285 P.2d 578, 587; *Tomsheck v. Doran* (1953), 126 Mont. 598, 607, 256 P.2d 538, 543; *Perry v. Luding* (1950), 123 Mont. 570, 591, 217 P.2d 207, 218.  "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation or restoration to the other which justice may require."  MCA § 28-2-1716.  Even if Chabot were not barred by the two-year Montana statute of limitations for fraud, her argument that she is entitled to rescission based upon fraud without paying WaMu on its loan for 5 years, except for a single payment, is contrary to Montana's rescission statute and principles of equity.

### e.  Count Three (FDCPA).

WaMu argues that Chabot's Count Three based on the Fair Debt Collection Practices Act ("FDCPA") is barred by the one-year statute of limitations under 15 U.S.C. § 1692k(d), and that

no liability arises under the FDCPA for communications made more than a year before the lawsuit is filed. *Pittman v. JJ Mac Intyre Co.*, 969 F.Supp. 609 (D. Nev. 1007). Section 1692k(d) provides that an action to enforce any liability under § 1692 *et seq.*, may be brought within one year from the date on which the violation occurs.

WaMu contends that Chabot was in default for five years, that any communications older than a year are time-barred, and that WaMu had the right to foreclose since Chabot was in default and its threat to take an allowed legal action is not a violation of the FDCPA. *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 394 (D. Del. 1991).

Regarding Chabot's accusation that WaMu used obscene or profane language over the telephone, WaMu denies the accusation and contends that Chabot's memory of the conversation was hazy and she could not recall the specific words used or who spoke them, or the specific dates except from October to December of 2004, which WaMu argues is not enough to avoid summary judgment. Dep., pp. 93-94. *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp. 1005, 1013 (N.D. Cal. 2005). WaMu contends that Chabot did not retain records of the alleged abusive calls, but that WaMu simultaneously records contacts it has with customers and its records show no telephone calls made to Chabot between October and December of 2004, making any earlier call beyond the one-year statute of limitations. SUF 15.

Chabot argues, as above, that WaMu waived the statute of limitations defense by not pleading it in its answer, and contends that her allegation that WaMu employed obscene or profane language happened and WaMu's denial creates a substantial dispute of material fact which should not be decided on summary judgment.

Based on WaMu's detailed SUF, corroborated by the declaration of Marlene Petros, Ex.

G, and Chabot's inability in her deposition to remember the dates of the alleged profane and

abusive calls and Chabot's failure to support her disputed facts with sworn affidavits or other

credible evidence, this Court finds that no genuine issue of material fact exists, that WaMu made

no telephone calls to Chabot during the period from September through December of 2004, and

therefore that WaMu is entitled to summary judgment as a matter of law on Count Three

(FDCPA) because Chabot's claims are barred by the one-year statute of limitations under §

1692k(d).

### f.  Count Five (UDTP)

Count Five is based on Montana's Unfair and Deceptive Trade Practices Act (UDTPA),

MCA Title 30, chapter 14, which are subject to a 2 year statute of limitations under MCA § 27-2-

211 under *Osterman*,  2003 MT 327, ¶ 24, 318 Mont. 342, ¶ 24, 80 P.3d 435, ¶ 24.  Chabot

argues that WaMu waived the statute of limitations by failing to plead it in its answer, and that

the claims are part of her affirmative defenses of recoupment and fact intensive, so should not be

subject to summary judgment.  As discussed above none of those arguments preclude WaMu's

assertion of the statute of limitation MCA § 27-2-211, and as all Chabot's allegations under

Count Five are the same as for the preceding counts arising from the transaction in 2002, when

all costs and interest charged on her loan were disclosed at closing and delivered to her no later

than April of 2002, Count Five is barred by the two-year limitation of MCA § 27-2-211 because

Chabot did not file her complaint until 2005.

### g.  Count Nine (Unconscionable Contract and Usury).

WaMu contends that Chabot's claim for usury and unconscionable contract are barred by

the two-year statute of limitations under both Montana and federal law, 12 U.S.C. § 86 and MCA

§ 31-1-108(2).  *Arrowhead, Inc. v. Safeway Stores, Inc.*, (1978) 179 Mont. 510, 587 P.2d 411, 415.  WaMu argues that Chabot was aware of the initial interest rate and adjustable rate at closing, and made only one payment on the loan, and further argues that the facts shows that she accepted the 12.15% adjustable rate loan WaMu with acceptance of a rebate and thereby waived any claim for usury.  Chabot's usury claims are barred by both the federal and state statutes of limitations for usury, and suffer from other problems under the statutes as well.

Both 12 U.S.C. § 86 and MCA § 31-1-108 provide for a two-year statute of limitations from the time the usurious transaction occurred (§ 86) or after payment of such interest (§ 31-1-108(2)).  The undisputed facts are that Chabot made only a single payment on her loan, which closed in 2002, and so not only is her claim for usury barred by the two-year statute of limitations because she did not file her complaint until 2005, but any recovery under state or federal law for usury, if not time-barred, would be calculated according to the interest component of Chabot's single payment.  In addition, the provisions of the Montana usury statute MCA § 31-1-107(3) specifically provides that the "provisions of this section do not apply to regulated lenders as defined in 31-1-111," where "regulated lender" means "a bank . . . ."  MCA § 31-1-111.  WaMu is a bank.  Thus Chabot's state and federal usury claims are barred by the two-year statutes of limitations, and the Montana usury state does not apply to WaMu, which is entitled to summary judgment dismissing Chabot's state and federal usury claims.

The other component claim in Chabot's Count Nine alleges is unconscionable contract.  Of all nine counts of the complaint, it appears that Count Nine is the only Count which is not outright barred by a statute of limitations.  WaMu does not cite a particular statute, so it would appear that the eight-year statute of limitation prescribed for an action on a contract or liability

33

founded upon an instrument of writing found at MCA § 27-2-202 applies, and Chabot filed her complaint including Count Nine within 8 years of the closing date.

WaMu argues that Chabot's claim for unconscionable contract is essentially a "catch-all" claim based on the same allegations as her other claims, and should fail for the same reasons as the others. Chabot argues that the unconscionable contract claim should only be dismissed if all her other claims are dismissed, but should survive if any other claim survives summary judgment.

Unconscionability in a contract is a concept introduced under the Uniform Commercial Code, and it requires a two-fold determination: That the contractual terms are unreasonably favorable to the drafter and that no meaningful choice on the part of the other party is available regarding acceptance of the provisions. *Leibrand v. National Farmers Union Property and Cas. Co.* (1995), 272 Mont. 1, 12-13, 898 P.2d 1220, 1227; *Kelly v. Widner* (1989), 236 Mont. 523, 527-28, 771 P.2d 142, 144-45.

WaMu provided detailed uncontroverted facts, supported with the loan documents, disclosures and deed of trust, in support of its motion for summary judgment. Those items form the basis for the averments under Count Nine alleging unconscionable contract. The Montana Supreme Court in *Kelly* stated that when it is claimed that a contract may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination. *Kelly*, 236 Mont. at 527, 771 P.2d at 145. Chabot offered no sworn affidavit showing a genuine issue of material fact on the issue of whether the loan documents and disclosures are unconscionable. Further, due to this Court's granting of WaMu's motion in limine she is precluded from calling any expert witness to

testify, including as to the commercial setting, purpose and effect of the loan transaction between the parties. The Debtor Chabot could testify, but she is constrained by the fact that she has been deposed.

The matter presents a difficult choice and close call. Chabot has the ultimate burden of proof under Count Nine, but cannot offer any expert opinion testimony in support of that claim because of the motion in limine, which the Court granted. Count Nine is a noncore proceeding, but if the Court were to abstain then WaMu, which has only received a single payment from Chabot on its loan over 5 years, would be subject to additional delay and Chabot might profit from her failure to comply with the Court's Order to disclose experts by convincing another court to allow her to present expert testimony.

Based on WaMu's SUF and supporting exhibits, and the delay in this case caused by Chabot, the Court opts against abstention in the interests of justice. No genuine issue of material fact exists, and based upon the Court's review of the loan documents, deed of trust and disclosures filed with WaMu's statement of uncontroverted facts the Court concludes that WaMu is entitled to summary judgment under Count Nine as a matter of law because Chabot cannot satisfy the requirements for unconscionability of showing that the contractual terms are unreasonably favorable to the drafter and that no meaningful choice on the part of the other party was available regarding acceptance of the provisions. *Leibrand*, 272 Mont. at 12-13, 898 P.2d at 1227; *Kelly*, 236 Mont. at 527-28, 771 P.2d at 144-45. Chabot had the meaningful choice regarding acceptance of the provisions, and in fact exercised meaningful choice by commencing to rescind the transaction until she was persuaded by means of additional money to abandon rescission and carry through with the loan.

**h. Count One (Wrongful Foreclosure)**; **Injunction/Stay.**

WaMu addresses Count One last, and argues that Count One depends on Chabot's ability to prove her other claims, and she cannot succeed unless she is entitled to rescind the loan and that remedy is unavailable because her other claims fail.  WaMu contends that it is entitled under the deed of trust to exercise its foreclosure remedies in the event the debtor defaults, and that Chabot defaulted because she made only one payment in 2002.

In this Court's view Chabot's Count One for wrongful foreclosure and Chabot's request for an injunction are premature and not ripe.  As discussed above WaMu's motion to modify stay is wholly separate and distinct from WaMu's foreclosure proceedings, whether by judicial or nonjudicial means.  With the denial of Chabot's discharge the stay was terminated by operation of statute, 11 U.S.C. § 362(c)(2)(C).  Chabot's request to continue the automatic stay runs afoul of § 362(c)(2)(C) and must be denied.  The Court is unaware of any grounds which support granting Chabot other injunctive relief.   No evidence exists before the Court that WaMu has initiated foreclosure proceedings, and therefore no reason exists to not grant WaMu's motion for summary judgment with respect to Count One as a matter of law because no foreclosure proceedings have been initiated and therefore Count One is not premature and not ripe, and all other counts of the complaint upon which Count One is based are subject to dismissal.  The Court specifies that dismissal of Count One (Wrongful Foreclosure) would be without prejudice.

**CONCLUSIONS OF LAW**

1.  This Court has jurisdiction of this adversary proceeding and contested matter under 28 U.S.C. § 1334(a) and (b).

36

2.  WaMu's motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G); all nine Counts of Chabot's adversary complaint are noncore proceedings, for which the Court submits proposed findings of fact and conclusions of law to the district court for de novo review under 28 U.S.C. § 157(c)(1).

3.  WaMu satisfied its burden for summary judgment of showing that no genuine issues of material fact exist, and that it is entitled to summary judgment as a matter of law with respect to Counts One through Nine of Chabot's adversary proceeding complaint.

4.  WaMu did not waive its affirmative defenses of statutes of limitations by filing an answer which failed to affirmatively set forth such affirmative defenses, under controlling Ninth Circuit case authority, when WaMu raised the statutes of limitations in its motion for summary judgment and the Plaintiff had an opportunity to respond and failed to show that she suffered any prejudice.

5.  Chabot's Counts Two, Six and Seven seeking rescission of her loan with WaMu are barred by TILA's three-year statute of repose, 15 U.S.C. § 1635(f).

6.  Chabot's claim for damages against WaMu for violations of TILA are barred by the one-year statute of limitations, 15 U.S.C. § 1640(e); and Chabot's affirmative defenses for recoupment and setoff under § 1640(e) are not before this Court.

7.  Chabot's Counts Four and Eight for damages and rescission based on fraud are barred by the two-year statute of limitations MCA § 27-2-203.

8.  Chabot's Counts Three (FDCPA), Five (UDTP) and Nine (Usury) are barred by their respective statutes of limitations.

9.  WaMu is entitled to summary judgment dismissing Chabot's Count Nine

(Unconscionable Contract) because WaMu satisfied its burden of showing that no genuine issue of material fact exists based on its Statement of Uncontroverted Facts and supporting documents, deposition and sworn statements, and Chabot's failure to present sworn affidavits or other evidence showing the existence of a genuine issue of material fact, and WaMu is entitled to summary judgment as a matter of law because the facts showed that Chabot had a meaningful choice regarding acceptance of the provisions of the loan agreements.

10.  WaMu is entitled to summary judgment dismissing Count One (Wrongful Foreclosure) of the complaint as premature and not ripe, without prejudice because WaMu has not commenced foreclosure proceedings, and because all other counts of Chabot's adversary proceeding complaint are subject to dismissal.

11.  The automatic stay was terminated by operation of statute, 11 U.S.C. § 362(c)(2)(C), upon denial of the Debtor Chabot's discharge.

**IT IS ORDERED** the Clerk of the Bankruptcy Court shall submit the above Memorandum, proposed findings of fact and conclusions of law dismissing Counts Two, Three, Four, Five, Six, Seven, Eight and Nine of the adversary complaint with prejudice, and dismissing Count One of the complaint without prejudice, to the United States District Court for the District of Montana, Missoula Division, for consideration under 28 U.S.C. § 157(c)(1), and FED. R. BANKR. P. 9033.

**IT IS FURTHER ORDERED** a separate Order shall be entered in Case No. 05-62798-7 in conformity with the above overruling the Debtor's objection and granting Washington Mutual Bank's amended motion to modify stay, filed October 24, 2005, in part and ordering the automatic stay terminated effective November 17, 2005, pursuant to 11 U.S.C. § 362(c)(2)(C)

38

upon denial of the Debtor's discharge.

**IT IS FURTHER ORDERED** that the Clerk of Bankruptcy Court shall serve forthwith copies of these proposed findings of fact and conclusions of law on all parties by mail and note the date of mailing on the docket; that the parties are granted ten (10) days after being served with a copy of these proposed findings of fact and conclusions of law to file with the bankruptcy clerk of court written objections, which identify the specific proposed findings or conclusions objected to and state the grounds for such objection; that a party may respond to another party's objections within 10 days after being served with an objection; that an objecting party shall arrange promptly for the transcription of the record; that the parties shall comply with the requirements of FED. R. BANKR. P. 9033; and that after the expiration of the time periods for objection these proposed findings of fact and conclusions of law shall be submitted to the United States District Court for the District of Montana, Missoula Division, pursuant to 28 U.S.C. § 157(c)(1) and  FED. R. BANKR. P. 9033, for consideration, de novo review and entry of a final order or judgment.

**IT IS FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that hearing on WaMu's motion for in rem relief (Docket No. 26 in Case No. 05-62798-7) will commence as scheduled on May 30, 2007.

BY THE COURT

*Ralph B Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

39